Mr. Ryan. Good morning, Your Honors, Counsel. May it please the Court. My name is Matt Ryan and I represent the appellant Joaquim Salas Leita Neto. We're here today because 1st Source Bank has filed substantively identical duplicative lawsuits against Mr. Neto. One such case in the United States District Court for the Northern District of Indiana, and a second duplicative case in Sao Paulo, Brazil. The bank originally filed this case in the Northern District of Indiana because the forum selection clause in the contract between the parties requires that, quote, Over a year later, on the 4th of July in 2016, the bank filed a substantively identical lawsuit against Mr. Neto in Sao Paulo. Mr. Neto moved to enjoin the bank from proceeding with the duplicative action in Brazil, and the District Court denied that request for an anti-suit injunction based, first, on the District Court's erroneous interpretation of the contract between the parties, and second, on what we believe is an incorrect application of the law in this court regarding issuance of anti-suit injunctions. The District Court held that Mr. Neto had agreed to subject himself and defend himself in multiple identical simultaneous lawsuits in both Indiana and wherever Mr. Neto happened to have assets. And that's not what Mr. Neto agreed to. He agreed that the bank could sue him to recover under the guarantee in the Northern District of Indiana, where the bank's located, and that the bank could then initiate proceedings wherever he had assets to collect on a judgment that it obtained against Mr. Neto. Well, that's not what the language says. What the language says is there are two clauses that issue. It's not limited to collections, the permissive. It's true that it doesn't expressly limit itself to collections, but the first section of the clause provides that, as I stated, all legal proceedings shall be brought in St. Joseph County, Indiana. The second permissive section, on which the bank and the District Court relied, states that the lender shall have the option, in its sole and exclusive discretion, in addition to the two courts mentioned above, that's the federal court in St. Joseph County and the state court in St. Joseph County, Indiana, to institute legal proceedings against the guarantor for repossession of the aircraft in any jurisdiction where the aircraft may be located from time to time, or against the guarantor, that's Mr. Neto, for recovery of monies due to the lender from the guarantor in any jurisdiction where the guarantor maintains temporarily or permanently any asset. And while it doesn't explicitly reference collection of a judgment in that context, when we take a step back, if what it means is that the bank, by virtue of filing the first lawsuit in Indiana, can then file a second duplicative lawsuit anywhere in the world where Mr. Neto has an asset, that just duplicates the very same action over and over again. There would be no purpose to require the bank to bring the case initially in the Northern District of Indiana, if only to bring it elsewhere around the world. So what it has to mean, and what the parties intended for it to mean, was for the bank to be able to follow Mr. Neto to wherever he does have assets and try to collect on a judgment after an Indiana court adjudicates the bank's rights under the guarantee. What language supports that interpretation?  What language elsewhere in the contract supports that interpretation? Well, Section 3.03 also supports it, where the bank had gone to great lengths to make sure that it could sue Mr. Neto in its home jurisdiction. Let's just take a step back here. What we're talking about is a personal guarantee between an Indiana bank and a foreign national. And what the document provides is that all proceedings shall be brought in the bank's backyard in South Bend, Indiana, where it's located. The document is governed by Indiana law. Mr. Neto must appoint an agent for service of process in Indiana. It's clear that the purpose here is to provide the bank the benefit of its home forum to adjudicate its rights. Right, and to get your client's waiver of any objection to that. Based on forum nonconvenience. And he's not objecting to it. Right, so he agrees that suits in northern Indiana are uncontestable. He can't contest that. But he also agrees to this broad permissive clause that says the bank can chase him anywhere in the world he has an asset. That's correct. And it doesn't have any limiting language at all. So it can't possibly refer only to judgment enforcement and collection actions. I think what the bank's construction and the district court's construction of this language has asked this court to believe is that Mr. Neto signed up to defend himself on the same claims wherever he has assets. It doesn't say that. That's exactly what the language says. But it doesn't say that. It does say that. It says that the bank has the right to pursue the grantor anywhere that, or the guarantor, excuse me, anywhere he maintains temporarily or permanently any asset. They can chase him anywhere he has an asset. And that's correct for the purpose of collecting on a judgment. It doesn't say that. You're adding that language. But in the context of the first clause, what more could it mean? Because we're required to read the contract. That's exactly what it's been understood to mean by the district judge and by three judges of this court, that he can sue anywhere. You're effectively asking us to overrule a panel decision that's already issued in this case, which construed this language exactly the way the district court did. I'm not asking you not to do that. That was a request for a temporary injunction pending this appeal. It was denied. And the reason the panel denied it is because the suit was consistent with the contract. And you're now asking us to hold that the suit is not consistent with the contract. My understanding of this panel's decision was that it felt that we had not demonstrated that there was a sufficient language. That was the second problem. There was more than one reason why you lost. Your Honor, I believe that when you take a step back and look at the purpose of the contract, if the contract is interpreted as it has been by the district court, then it reads out the meaning of mandatory language, and it's not a forum selection clause at all. In order to read the contractual provisions so that they are in harmony with one another, I submit that Mr. Netto's reading makes the most sense. Otherwise, the mandatory language in the first section would be meaningless. It also creates the potential for absurd results and inconsistent judgments if there are identical suits pending around the world on the same substantive legal issues that are being addressed in the district court. I think the district court's reading, frankly, asks this court to believe that a court sitting in Brazil or a court sitting wherever else Mr. Netto has an asset is as well-situated or better-situated than an Indiana court to adjudicate those claims. And that just simply can't make sense. The purpose of the guarantee was to provide additional security and enable the bank to have an Indiana court determine its rights, and then the reason why the language in the second clause is linked to Mr. Netto's assets is so it can go get his assets once it gets a judgment. And Mr. Netto hasn't objected to that. This is not a situation where Mr. Netto hasn't defended himself. He has. He appeared. We know the bank intended that this was the purpose of the language, among other reasons, because that's what the bank specifically alleged in its original complaint and in its amended complaint. It didn't simply allege that venue was proper in the northern district of Indiana. It said that, quote, and that, quote, So those judicial admissions demonstrate what the bank intended by the language in the agreement. The banks argued that they don't really mean what they say and that it was simply reciting the terms of the forum selection clause. But it wasn't until a year later that the bank filed its action in Brazil. And even if the bank is not judicially estopped from reversing course on this position, which we submit that it should be, those admissions demonstrate at a minimum that when the bank filed the suit in the northern district of Indiana, it knew that it was compelled to do so under the terms of the document. Now, the district court also found that, although it rested its decision primarily on its interpretation of the forum selection clause, that Mr. Netto wasn't entitled to an anti-suit injunction because he hadn't satisfied the necessary criteria for obtaining one. We believe that the district court didn't properly apply the law in this circuit because this court allows an injunction against litigating in a foreign forum upon a finding that letting the two suits proceed would be gratuitously duplicative or, as the cases sometimes say, vexatious and oppressive. And we know that from Allendale Mutual Insurance Company v. Bull Data Systems. The district court expressly found that these two cases were duplicative. It found that they had the same parties, they had the same substantive legal issues, and that a judgment in the district court would be determinative of the same legal issues in a Brazilian court. These findings alone, for the purposes of this circuit, would be sufficient for the court to find that the action was gratuitously duplicative. Nonetheless, the district court, again relying on the forum selection clause, found that Mr. Netto had agreed to the action, and we believe that this motivated the district court's statement that Mr. Netto had failed to establish that the Brazilian action was vexatious. We know in this case that international comedy is of no concern. The parties don't dispute that. And we believe that based on Phillips Medical Systems v. Brutman, in a case where international comedy is not of concern, there may be a lesser showing of a need for the relief for an anti-suit injunction, perhaps nothing more than a duplication of the parties and the issues. And the court opined that that sort of thing might suffice. And such is the case here. But the district court felt that something more was required, and we don't believe that was correct, and therefore we respectfully request that the district court be reversed. All right. Thank you, Mr. Ryan. Mr. Abeska? Thank you, Your Honor. I may have pleased the court. This case is straightforward and simple on the two levels relevant to this appeal. One is in terms of the underlying business transaction. Excuse me. First source bank made a loan secured by an aircraft that was previously purchased by one of Netto's companies and put into trust. So while there's an owner-trustee which signed the underlying promissory note, the owner-trustee has no personal liability. The reason for the guarantee is that if there is a default, which is the case, the bank wants to be able to go to the guarantor to get its money back. There has been a default. The bank wants its money back. The second straightforward and simple situation before the court is the guarantee itself, controlled by Indiana law, a state which time and time again upholds the freedom of contract between parties and forces contracts as they are written, says that someone who signs a contract is deemed to have read and understood what he signed, and courts that will not rewrite contracts just because their application down the line is not to the liking of one of the parties who signed it. That's exactly what's going on here. Netto is not happy that first source is exercising the full range of rights against him under the guarantee. And all one has to do is dissect Section 3.02 of the guarantee. This is not a boilerplate document. The first chunk of Section 3.2 specifically references Brazilian law. That law relates to choice of law and choice of forum. It shows that the guarantee was crafted specific to this transaction with a guarantor who is a citizen of the Federated Republic of Brazil. Sure, the guarantee says, the guarantor hereby irrevocably and unconditionally agrees that all legal proceedings shall be brought in the Northern District of Indiana or Indiana State Court. That gives the bank the right to sue. Obviously the bank does want to be able to do that in its own backyard, to use counsel's term. But what it also means is that if the guarantor is going to come in and make some kind of affirmative claim against the bank, that Indiana is the place where the guarantor has to do that. So this provision is intended to make the guarantor come to Indiana and assert any claims he might have or thinks he has against FirstSource Bank in Indiana and not in some far-flung foreign jurisdiction. And this provision goes on to say, as you already know, that the lender has the option in its sole and exclusive discretion, in addition to the state and federal courts referenced in Indiana, to sue the guarantor for repossession of the plane or seek the recovery of monies due to the lender in any jurisdiction where the guarantor maintains temporarily or permanently any assets. Words matter. The contract doesn't say, instead of or alternatively the bank can go to a different place. It says, in addition to. And to seek recovery of monies due doesn't necessarily mean that there is a judgment entered by a court in the United States and that this then becomes a chase for collection of that judgment. The guarantee could have said, recovery of monies due, means as established by a court of competent jurisdiction in St. Joseph County, Indiana, but it doesn't. This provision, this discretionary provision, is not limited to the enforcement of a U.S. judgment. And why would you even say that in the contract? The right certainly exists anyway. When someone recovers a judgment in a United States court against a foreign national, the party recovering the judgment always has the right to, subject to the laws and friendliness of the courts in the jurisdiction where the judgment debtor lives, to pursue collection in that country. So there's no reason to have included this language if the court were to accept Netto's interpretation of the contract. The provision is not indiscriminate. It specifically says where the plane may be located. And unfortunately for Netto, the plane's located in the possession of the Brazilian authorities and is unavailable to the bank and is unavailable to Netto. Or any jurisdiction where Netto has temporarily or permanently any assets. So the confines of the venue provision are governed by where he has his assets. And the fact that it talks in terms of a temporary location of an asset shows that this provision is intended to give FirstSource Bank the maximum flexibility needed to effect collection on the guarantee in the event of default. The goal here is payment from the guarantor, and under this contract more than one road leads to Rome. And the bank has done nothing wrong by filing a lawsuit in Brazil It's done something that is clearly within its right under the clear and unambiguous language of this guarantee. The cases are not substantively identical. I keep hearing that. There is no pre-judgment attachment remedy available to FirstSource Bank in the United States because Netto has no assets within the reach of the court sitting in the Northern District of Indiana. Brazil affords a pre-judgment attachment remedy. That's why Netto's here, in all candor, because he doesn't want to have to deal with the attachment process in Brazil and run the risk that the law of his own country presents to him. But that alone isn't enough for an anti-suit injunction to issue from this court. Now, most of the cases cited in the brief, both briefs, are readily distinguishable from this case because they don't involve one plaintiff who is availing itself of the right under a specific contract to sue in two different jurisdictions. Most of them involve races to the courthouse or attempts to circumvent an arbitration provision or wait until a case is deep, deep, deep in discovery and it looks like someone thinks they're going to lose so they decide to reverse course and seek a remedy elsewhere. This case is most like the Rosenblum case, which both sides cite in their briefs. You have a former law partner of an international law firm suing in the United States, claiming fraud in a loan transaction where the loan agreement requires actions to be filed in the English courts and where the plaintiff law partner agreed to be sued.  outweighed issues involving international comedy and failed to demonstrate that the action was vexatious or oppressive. A vexatious action would be one filed without cause or with malice, neither of which is present here. And Rosenblum articulates the standard to be applied. Parties and issues in both proceedings are the same. While the parties here are the same, the issues are not because of the prejudgment-attachment distinction in Brazil. Resolution of the first action would be dispositive of the action to be enjoined. There's an affidavit or declaration from Brazilian counsel in the record that explains that the resolution of the first action, meaning the one in district court, may not at the end of the day be the one that is controlling. And then it's up to Netto to show that the balance of domestic interests, such as the prevention of harassing or oppressive litigation, outweighs the concerns of international comedy. None of this is present here. He's being sued in his home country. It's certainly less inconvenient for him to deal with First Source Bank in Brazil than it is up here. And he hasn't really been put through very much up here. One day of a deposition and one day of a failed mediation. The last point I'd like to make is First Source Bank has not made a judicial admission in alleging in a complaint the basic reason why this issue and claim is before the court below. In fact, this argument is actually a reversal of position by Netto, who didn't even admit the basic jurisdictional allegations in the complaint. If you look at his answer to the first amended complaint, which is document number 63 in the court below, in response to the allegations of what the guarantee says and that the litigation belongs here, the responses are things like these state legal conclusions we don't have to answer and if an answer is required, we deny. The guarantee speaks for itself. So now the venue provision that Netto wanted to run away from when he responded to the complaint, he's here embracing. So it's a reversal of position on his part. In no event is it a judicial admission because you don't have an allegation that is admitted with an unequivocal admission in the response of pleading, thereby establishing a fact to be taken as true without further proof. It's not judicial estoppel because there's no ruling here that was decided one way and then first source has decided to take a second bite at the apple on, like the case New Hampshire and Maine where you have one state previously agreeing where the boundary is in a river and then changing its mind in another case because it wants to get more territory. So it's not judicial admission. It's not judicial estoppel. And for all these reasons, Judge Lee got it right. His analysis of the contract was in accord with Indiana law. His refusal to issue an anti-suit injunction was consistent with the reasonable range of options presented to him and it does not present this court with an abuse of discretion. So unless the panel has any questions of me, I'll conclude at this point. Thank you, Mr. Spence. Thank you, Your Honors. Mr. Ryan. Thank you, Your Honors. First, I'd like to respond to something that counsel said about there's more than one road that leads to Rome. And the bank's position in this case is that you have to take two different roads to Rome at the same time. You have to file a case in the Northern District of Indiana and if you want to file a case elsewhere where Mr. Netto has an asset, then you're permitted to do so simultaneously. And both those roads lead to Rome. That's just not a common sense reading of what was intended by the contract. It was mentioned that there would be no reason to have the second permissive clause in the contract if, in fact, it was merely to collect a judgment. I'd just like to comment on that because the last sentence of Section 3.02, after the bank is granted the discretion to bring an action in any jurisdiction where Mr. Netto has an asset, says, quote, the parties hereby consent and agree to be subject to the jurisdiction of all the aforesaid courts and, to the greatest extent permitted by applicable law, the parties hereby waive any right to seek to avoid the jurisdiction of the above courts on the basis of the doctrine of forum nonconvenience. That's the purpose here is that they want to be able to go after Mr. Netto's assets even if there may not be personal jurisdiction over him in a particular country but where he has assets. And they want to know that he's not going to object to that on the basis of forum nonconvenience. That's not happening here. Mr. Netto hasn't run away from the venue. He's participated in the litigation and defended himself from it. The bank argues that this case is most like Rosenblum. I submit it's not much like Rosenblum. In Rosenblum, the party seeking the anti-suit injunction was the plaintiff who the court found had filed what it determined to be a preemptive strike in order to control the venue of the dispute. The former Dewey LaBeouf partner filed in the Northern District of Illinois when, in fact, the loan document with Barclays was governed by English law and specifically required that he submit to jurisdiction of the English courts. So the case that was being sought to be enjoined was a case brought by Barclays, the defendant, in England that was clearly in accord with the loan document. The plaintiff in Rosenblum, if the plaintiff in Rosenblum wanted to avoid duplicative litigation, all he had to do was voluntarily dismiss his case in the Northern District of Illinois. Mr. Netto doesn't have that choice. He has to defend himself on the same claim twice. That's not a fair reading of the contract, and we respectfully request that the court reverse the district court's decision. If you have any questions. Thank you, Mr. Ryan. Thank you. Thanks to all counselors. Case is taken under